**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ZAKKIYYA GREENE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 2182** |
| | ) | |
| **ILLINOIS SECRETARY OF STATE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Zakkiyya Greene has sued her former employer, the Illinois Secretary of State, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Greene alleges that the Secretary discriminated against her based on her status as a woman and pregnant woman and subjected her to a hostile work environment. The Secretary has moved for summary judgment on all of Greene's claims. For the reasons below, the Court grants in part and denies in part the Secretary's motion.

**Background**

The following facts are undisputed unless otherwise noted. Greene was employed by the Secretary as an Intermittent (part-time) Public Service Representative at its Chicago North Driver Services facility from November 1, 2019 through July 19, 2021. On June 29, 2020, Greene began an authorized leave of absence due to medical reasons related to her pregnancy. She gave birth to her child on July 29, 2020. Greene was on various family-related leaves until April 19, 2021. On June 25, 2021, Greene

received her final probationary evaluation. The evaluation stated that she had two tardies and four unexcused absences. The evaluation also stated that there was no sign of improvement with her attendance since her last evaluation.

Greene and the Secretary dispute the number of unauthorized absences that she incurred during her employment. At some point after her final probationary evaluation, Greene disputed the number of unauthorized absences included in the evaluation. After review, the Secretary determined that three of the four unexcused absences included on Greene's evaluation had been incorrectly recorded.

On July 1, 2021, the Discipline Coordinator for the Department of Driver Services, Rocco Abbinanti, submitted a request to Lindsay Richmond, the Discipline Liaison for the Secretary Personnel Department, asking to discharge Greene as a probationary employee based on her attendance. After receiving this request, Richmond collected and reviewed Greene's personnel file, time and attendance records, counseling memos, and performance evaluations. On July 12, 2021, Richmond submitted a request to the Secretary's executive office recommending Greene's discharge. On July 19, 2021, the Secretary discharged Greene.

The Secretary requires part-time employees to complete a trial period of employment for the first 979 work hours from the date of initial hire. If an employee is absent from work for more than fifteen workdays during the probationary period, the absence extends the probationary period. A probationary employee receives certified status after successful completion of a probationary period. Certified status provides employees with certain rights and benefits that are not available to probationary employees. The parties dispute whether Greene was a probationary employee at the

time she was terminated.

On March 20, 2022, Greene filed a charge of discrimination with the Illinois Department of Human Rights alleging discrimination based on her sex and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964. She received a Notice of Right to Sue on February 24, 2023.

On April 6, 2023, Greene filed her initial complaint in this case. The Court granted the Secretary's motion to dismiss the complaint but granted Greene leave to file an amended complaint. Greene filed her first amended complaint on January 4, 2024. The Secretary again moved to dismiss. The Court granted the motion and granted Greene leave to file another amended complaint. On June 10, 2024, Greene filed her second amended complaint. It includes two counts—one entitled pregnancy discrimination and one entitled sex discrimination—but the parties treat the complaint as if it includes claims for discriminatory termination and claims for a hostile work environment, so the Court will do the same.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of establishing that

there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the party that bears the ultimate burden at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If the party with the burden of proof cannot show that its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24. "We apply the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility." *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

## A.    Exhaustion

The Secretary argues that Greene failed to exhaust administrative remedies for her discrimination and hostile work environment claims. Greene responds that her charge, drafted without the benefit of counsel, expressly includes "assertions of key acts of sex and pregnancy discrimination [that] put SOS on sufficient notice that it would be facing reasonably related allegations of sex and pregnancy discrimination taking place throughout [her] employment." Pl.'s Resp. at 5.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). But "because most EEOC charges are completed by laypersons rather than lawyers" "[t]he test for determining whether an EEOC charge encompasses the claims in a complaint [ ] grants the Title VII plaintiff significant leeway . . . ." *Id.* The charge and complaint must include claims that are "like or reasonably related." *Chaidez*

*v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). This test involves a two-part analysis: (1) whether there is "a reasonable relationship between the allegations in the charge and the claims in the complaint"; and (2) whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* The "charges and complaint must, '*at minimum*, describe the same conduct and implicate the same individuals.'" *Id.* (quoting *Cheek*, 31 F.3d at 501).

Greene's claims share a reasonable relationship with the allegations in the charge. The Secretary argues that the charge and claims involve different individuals because Greene's claims of discrimination prior to her leave involve supervisors Larry Morales and Giovanna Marano and her allegations after her return from pregnancy involve supervisors Rosie Perez and Peggy Dow. This argument is unpersuasive. It is undisputed that Greene's direct supervisor throughout her employment was Perez and her next level supervisor was Morales. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt., ¶ 9. And Dow is included on emails before, during and after Greene's leave of absence. Pl.'s Stmt. of Add'l Material Facts, Ex. 16. The Secretary also argues that Greene's charge did not put it on notice that she was alleging discrimination prior to her pregnancy-related leave. But Greene's charge stated that she began her employment with the Secretary on or around September 25, 2019. The Secretary's own arguments also recognize that Greene's entire employment record is relevant to the charge. Thus the Court concludes that Greene's charge and claims describe the same conduct and implicate the same individuals.

Greene's claims could reasonably be expected to grow out of the EEOC's investigation of the allegations in the charge. It is reasonable to expect that the EEOC

would investigate Greene's interactions with supervisors and co-workers from the date she began employment through her termination. This would lead to the review of Greene's full attendance record to determine if her termination was the result of discriminatory animus and the alleged actions and comments that she asserts in support of her hostile work environment claim.

The Court therefore overrules the Secretary's exhaustion defense.

**B.     Duplicative claims**

The Secretary contends that Greene's pregnancy discrimination claim is duplicative of her sex discrimination claim because, it says, the claims involve the same legal elements and the Court performs the same legal analysis. The Secretary also argues that the claims are duplicative because they are based on identical allegations. Greene responds that her claim of sex discrimination is based on facts that are distinct from her pregnancy discrimination claim and thus both should proceed. She cites allegations that her supervisor professed discriminatory beliefs about women and that this supervisor discriminated against her in lowering her evaluation scores.

Courts have authority to dismiss as duplicative "[c]laims that involve the same operative facts and same injury, and that require proof of essentially the same elements." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014). This authority, however, is discretionary. *See, e.g., Sanchez v. Village of Wheeling*, 447 F. Supp. 3d 693, 707 (N.D. Ill. 2020) (distinguishing *Barrow* and declining to dismiss two allegedly duplicative claims). Additionally, the Seventh Circuit has not weighed in on whether it is appropriate to dismiss a cause of action on summary judgment as being duplicative. *3M v. Pribyl*, 259 F.3d 587, 604 (7th Cir. 2001). The Court will not dismiss either claim

at this point but reserves the right to review the matter as trial approaches.

## C.    "Sham" affidavit

The Secretary argues that the affidavit submitted with Greene's response is a "sham" and thus the Court should disregard it.  The Seventh Circuit has held that a court may disregard an affidavit that conflicts with the affiant's previous deposition testimony.  *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015).  A "sham" affidavit is one that sets up "contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment."  *Id.*  In cases where the Seventh Circuit has "rejected a change in testimony, the witness has consistently adhered to one version of events prior to the change." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007); *see Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) (explaining that a contradiction exists only when the statements are inherently inconsistent, and not when the later statement merely clarifies an earlier statement which is ambiguous or confusing).

If a court determines that an affidavit conflicts with the affiant's prior deposition testimony, it "must examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury." *Patton*, 480 F.3d at 488.  If there was "a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered after the original testimony, or ambiguous or incomplete earlier testimony," *id.* (internal citations omitted), the conflict presents a credibility issue for a jury.

In this case, Greene's affidavit often provides more detailed information than her

earlier testimony.  This is not a contradiction.  In many instances, the Secretary also argues that Greene's affidavit conflicts with other evidence in the record.  The "sham affidavit" rule does not apply in such situations.  These conflicts give rise to credibility and factual disputes for the jury to resolve, not questions for the Court to determine on summary judgment.

The Court thus concludes it may rely on Greene's affidavit.  To the extent the Court does so, it addresses the Secretary's arguments regarding each statement.

**D.     Merits**

**1.     Discrimination claims**

Title VII of the Civil Rights Act of 1964, in pertinent part, makes it unlawful for an employer "to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).

"[T]he singular question that matters in a discrimination case" is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race [or other protected characteristic]  . . . caused the discharge or other adverse employment action."  *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). (internal quotation marks omitted).  One way that a plaintiff can organize the evidence supporting a discrimination claim is via the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To withstand summary judgment under the *McDonnell Douglas* test, the plaintiff must establish a prima facie case of discrimination by presenting evidence from which a reasonable factfinder could

determine that she "(1) [is a] member[] of a protected class; (2) performed reasonably on the job in accord with [her] employer['s] legitimate expectations; (3) w[as] subjected to an adverse employment action despite [her] reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer." *Johnson*, 892 F.3d at 895. "[I]f a plaintiff successfully makes out a prima facie case, the employer must then present a legitimate, non-discriminatory reason for the allegedly unlawful action." *Alexander v. Wis. Dep't of Health & Fam. Servs.*, 263 F.3d 673, 682 (7th Cir. 2001). If the employer satisfies that burden, the plaintiff must present evidence that would support a finding that "the employer's stated reason is merely a pretext for discrimination." *Id.*

If a plaintiff seeks to establish a discrimination claim without utilizing the *McDonnell Douglas* framework, the plaintiff must provide either direct or circumstantial evidence that would permit a reasonable factfinder to draw an inference of intentional discrimination. *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) (citing *Ortiz v. Werner Enters. Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016)). Examples of this circumstantial evidence include "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll*, 963 F.3d at 929. Summary judgment is inappropriate "[i]f the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action . . . ." *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).

Greene references both the *McDonnell Douglas* test and the *Ortiz* standard in

her brief. The Court will generally follow the *McDonnell Douglas* framework but will also review the evidence in the aggregate to determine if there is an "overall likelihood of discrimination." *Joll*, 953 F.3d at 924.

The parties agree that Greene was a member of a protected class, a pregnant woman, and that she was subjected to an adverse employment action when she was terminated. The Secretary argues that Greene cannot establish a prima facie case of discrimination because she was unable to meet the Secretary's legitimate job expectations and cannot show any similarly situated employees outside her protected class were treated more favorably. Greene responds that she was performing well at the time of her termination and that the Secretary's arguments related to her attendance are based on disputed facts. Greene also points to three employees who, she contends, were similarly situated, outside her protected class, and treated more favorably.

The Secretary is correct that repeated violations of an employer's absentee policy can be evidence that an employee is not meeting the employer's legitimate expectations. *Contreras v. Suncast Corp.,* 237 F.3d 756, 761 (7th Cir. 2001). But the Secretary's Code of Ethical Conduct does not define "excessive absenteeism or tardiness." Def.'s L.R. 56.1 Stmt., Ex. 7 at 3. And Greene has identified genuine disputes of material fact related to her attendance record and the application of the Secretary's policies. In particular, Greene disputes a number of the unexcused tardies and absences that the Secretary included in her employment record. Based on Greene's assertions, she was unexcused absent or tardy for a total of 0.3 hours, or 18 minutes, in her final probationary period. And the Secretary admits that at least three of

10

the unauthorized absences recorded after Greene returned from leave were improperly recorded. She also asserts that she noticed her supervisors changing her sign-in times.[1] The Secretary broadly argues that Greene's testimony and affidavit supporting these points is contradicted by other evidence in the record. Greene also relies on two emails from an employee who trained her, Marketta Paylor, to argue that she was performing well at the time of her termination. Although not dispositive, these emails provide additional circumstantial evidence in support of Greene's claim. The Court concludes that a reasonable jury could infer that she was meeting the Secretary's legitimate job expectations. *Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 602 (7th Cir. 1998) ("It is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of [her] job.")

The Secretary also argues that Greene cannot show that the Secretary treated a similarly situated employee less favorably than her. "Similarly situated means 'directly comparable' in all material respects." *Johnson*, 892 F.3d at 895. The Seventh Circuit has stated that district courts should not use a "magic formula" but has "set forth examples of evidence that would be required in the usual case." *Id.* "These included whether the employees being compared (1) were supervised by the same person, (2) were subject to the same standards, and (3) engaged in similar conduct without such

---

[1] The Secretary argues that the Court should disregard Greene's affidavit on this point because it conflicts with her prior deposition testimony because Greene "testified she did not see who changed the sign-in sheet." Def.'s Resp. to Pl.'s. Stmt. of Add'l Material Facts, ¶ 12. Greene testified that she would see that her sign-in times were changed and believed that one of her supervisors changed the information. Def.'s L.R. 56.1 Stmt., Ex. 2, 138: 11-17. This is consistent with the statement in her affidavit that she "noticed" Secretary supervisors changing her sign-in times on the attendance sheet.

differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

Greene offers three employees that she argues were similarly situated but "did not suffer consequences as harsh as [her] due to issues with attendance." Pl.'s Resp. at 10. The first employee, Michael Zucchero, was a male who received a two rating on his evaluation and had two tardies and two absences. The second employee, John Morreale, was a male who was rated one and a half on his evaluation and had three unexcused absences. The third employee, Rachel Mejia-Nunez, was a woman who was not pregnant and accrued "a significant number of absences and tardies." Pl.'s Resp. at 10. The Secretary responds that Greene fails to show that the performance evaluations and time records for these employees were completed by the same supervisors as Greene, or that the employees had the same job duties and working conditions as Greene.

Zucchero is not similarly situated because his evaluation does not state that any of his tardies or absences were unexcused. This is a material difference from Greene, who had unexcused tardies and absences.

A reasonable jury could find that Morreale is a similarly situated employee. Morreale's evaluation shows he was a probationary employee. He was also employed at the same facility as Greene—Chicago North Driver Services—at the same time. Perez testified that she was the morning assistant manager at the Chicago North Driver Services facility. Def.'s L.R. 56.1 Stmt., Ex. 4 at 18:5-12. In that role, Perez checked for staffing and who called in each day. *Id.* at 18:13-15. She also met with her manager regarding any type of staffing and any reports that needed to be addressed. *Id.* at

18:21-23.  A reasonable factfinder could infer that Perez was the decision-maker for recording absences for both Morreale and Greene.  It is also undisputed that each Driver Services facility, including the Chicago North location, had an "attendance clerk" assigned to it who was responsible for maintaining the daily attendance timesheets and submitting them to the Personnel Division within the Department of Driver Services.  A reasonable jury could infer that the same "attendance clerk" was responsible for maintaining the timesheets for Morreale and Green.  Additionally, Rocco Abbinanti was the Director of the Department of Driver Services.  Abbinanti submitted a formal request for probationary discharge of Greene on behalf of the Department of Driver Services.  Morreale was also an employee in the Department of Driver Services.  Because Morreale was also an employee in the Department of Driver Services, a reasonable factfinder could infer that Abbinanti was the decisionmaker for any discipline or termination of Morreale as well.

A reasonable jury could also find that Morreale and Greene were subject to the same job duties and standards.  The Secretary's Code of Ethical Conduct applies to "employees and contractors of the" Secretary—including both Morreale and Greene.  Def.'s L.R. 56.1 Stmt., Ex. 7 at 1.  Morreale's title was Public Service Representative; Greene's title was Intermittent Public Service Representative.  Based on the record before the Court, the only difference between these roles is that one is full time and the other is part time.  The Seventh Circuit has stated that "only where a part-time employee and a full-time employee differ solely in hours worked and are materially similar in all other respects can they serve as relevant comparators."  *Gamble v. County of Cook*, 106 F.4th 622, 627 (7th Cir. 2024).  Just so here.  As Perez testified, the

difference between an intermittent public service representative and a public service representative is the number of hours they work. Def.'s L.R. 56.1 Stmt., Ex. 4 at 140:9-22. Morreale and Greene appear to be materially similar in all other respects aside from their part-time and full-time status. Thus Morreale can serve as a relevant comparator who was outside Greene's protected class.

The Secretary argues that "there is no evidence that these employees engaged in the same conduct as [Greene] and were treated more favorably, including that they incurred the same or similar number of unauthorized absences and tardies." Def.'s Reply at 10. But "precise equivalence . . . between employees is not the ultimate question." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11 (1976)). Instead, "[c]omparators must have 'engaged in similar—not identical—conduct to qualify as similarly situated.'" *Id.* (quoting *Peirick v. Indiana Univ.–Purdue Univ. Indianapolis*, 510 F.3d 681, 689 (7th Cir. 2007)).

Morreale's final probationary evaluation states that he had four sick and three unexcused absences since his previous evaluation.[2] He received a score of one and a half for compliance with Secretary policies on absenteeism, tardiness and work time management. Greene's final probationary evaluation stated she had two tardies and four unexcused absences since her previous evaluation. She received a score of zero in the same section of the evaluation in which Morreale received a score of one. The Court concludes that Morreale is "similar enough to permit a reasonable juror to infer, in

---

[2] The Secretary's argument that Morreale's evaluation is unsigned poses a credibility issue for the jury.

light of all the circumstances, that an impermissible animus motivated the [Secretary's] decision." *Coleman*, 667 F.3d at 841.

Greene also presents circumstantial evidence that, if her absences were properly recorded, she would have only one unauthorized absence, two fewer than Morreale. Greene's supervisor informed her that the four unauthorized absences referenced in her final probationary evaluation occurred on March 1, March 2, April 19, and May 25, 2021. The Secretary does not dispute that two of the absences, March 1 and March 2, 2021, occurred when Greene was still on leave. The Secretary also recognizes that Greene was told not to go to work on May 25, 2021 because her child tested positive for COVID but notes that she received a tardy for calling in late with this information. Thus three dates were improperly recorded by the Secretary as unauthorized absences on her final probationary evaluation. This circumstantial evidence, when considered along with the totality of the record, would allow a reasonable factfinder to infer that the Secretary's decision to terminate Greene was based on a discriminatory motive.

Mejia-Nunez's excessive number of unexcused tardies and absences also provides circumstantial evidence in support of Greene's claim. As indicated, the similarly situated inquiry generally involves a showing of the same supervisor, standards, and conduct without distinguishing circumstances, but "the . . . inquiry is a flexible one that considers 'all relevant factors, the number of which depends on the context of the case.'" *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404–05 (7th Cir. 2007) (quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). Mejia-Nunez was employed in the same position as Greene, Intermittent Public Service Representative, at the same Driver Services facility. The only potential difference

15

between them is that Greene may have been a probationary employee and Mejia-Nunez may been a certified employee.[3]  But Greene has presented evidence that Mejia-Nunez received at least twenty-four unexcused tardies and absences—far more than Greene—but was not terminated.  Mejia-Nunez was not pregnant.  The Court concludes Mejia-Nunez's unexcused absence record is additional circumstantial evidence that permits a reasonable jury, when viewing the totality of the circumstances in this case, to infer "an overall likelihood of discrimination."  *Joll*, 953 F.3d at 924.

Moving ahead in the *McDonnell Douglas* analysis, the Secretary argues that it had a legitimate, non-discriminatory reason to terminate Greene—excessive tardiness and absenteeism.  Greene responds that this reason was pretextual.  A discrimination plaintiff may use "comparator evidence to discharge her burden at the pretext stage as well as to satisfy the fourth element of her prima facie case."  *Coleman*, 667 F.3d at 853.  And "evidence of selective enforcement of a rule 'calls into question the veracity of the employer's explanation.'"  *Id.* (quoting *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001)).  Thus the circumstantial evidence Greene cites that would permit a reasonable jury to infer that Morreale and Mejia-Nunez were treated more favorably than her also supports an inference of pretext.

Another item of circumstantial evidence that supports Greene's claims is the

---

[3] The parties have not presented evidence establishing whether Mejia-Nunez was or was not a probationary employee.  As for Greene, she asserts that her attendance records show she had accrued a total of 1547.64 work hours and that, if so, she should have been treated as a certified employee.  Pl.'s Stmt. of Add'l Material Facts, Ex. 1 at ¶ 39.  The Secretary responds that Greene was still within her probationary period because the period was extended based on her leave of absence.  *Id.*  Greene had received her "final probationary evaluation" in June 2021.  There is a genuine factual dispute regarding whether Greene was entitled to the status of a certified employee at the time she was terminated.

testimony from Perez that she could not recall any employee—other than Greene—who improved her attendance but still received a lower score on her next evaluation.  Def.'s L. R. 56.1 Stmt., Ex. 4 at 107:10-14.  A reasonable factfinder could infer from this testimony, based on the totality of circumstances in this case, that the Secretary's stated reason for Greene's termination—excessive absenteeism—was pretextual.

Greene also cites internal Secretary emails that she contends support her claims. On January 5, 2021, Sue Dey, an employee in the Department of Personnel, emailed a group of Secretary employees and stated, "Attached please find the leave request for Zakkiyya to go on Family Leave.  These are not going to stop anytime soon.. Lol."  Pl.'s Stmt. of Add'l Material Facts, Ex. 16 at 7.  Then on June 14, 2021, two months after Greene returned from maternity leave, Peggy Dow, a supervisor in Driver Services, emailed Dey about Greene and stated, "she's barely worked since she got hired."  *Id*. at 8.  Dey responded, "I know it. She might as well just quit."  *Id.*  A reasonable jury could infer that these emails were directly related to Greene's decision to take approved, pregnancy-related leaves of absence and, therefore, that the Secretary's decision to terminate her was based on her protected class as a pregnant woman.  *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 285–86 (7th Cir. 2015) (emails of complaints about the plaintiff's military service, followed by discussions about disciplining plaintiff for other reasons, could allow the inference that her punishment for other minor infractions "was actually motivated by her supervisors' long-standing frustration about her frequent absences").

Additionally, the Seventh Circuit has "long held that an employer's shifting and inconsistent explanations for an adverse employment action can support an inference of

pretext." *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 915 (7th Cir. 2025). Greene's termination letter stated that she was discharged for her "excessive absenteeism or tardiness." Def.'s L.R. 56.1 Stmt., Ex. 19. This is the same argument that the Secretary puts forth in this case. Before the EEOC, however, the Secretary asserted that Greene could not process applications without assistance, did not retain information required to perform her job duties, and became defensive when provided guidance on how to improve her work performance. Pl.'s Stmt. of Add'l Material Facts, Ex. 18.[4] This reason was not included in Greene's termination letter or any other communication with Greene that is in the record before the Court. This single shift in the Secretary's explanation arguably may not be sufficient by itself to show pretext. But this new explanation is another item of circumstantial evidence that, together with other evidence, would allow a reasonable jury to infer that Greene was discharged based on discriminatory animus.

Greene also argues that she was treated differently from other Secretary employees because she received an unfavorable seating assignment and experienced heightened monitoring. This circumstantial evidence, though also likely insufficient on its own to prove discriminatory motive, adds additional support for Greene's claim that the Secretary discriminated against her based on her protected status as a pregnant woman.

The Secretary argues that Greene cannot show that the Secretary's decision to

---

[4] The Secretary argues that the EEOC memo is inadmissible hearsay. The EEOC memo is a formal "Recommendation for Closure" that is typed, sets out the factual findings from a legally authorized investigation, and is signed by the EEOC investigator. The Secretary does not attack the document's accuracy. These factors indicate the level of trustworthiness for the record to be admissible under Federal Rule of Evidence 803(8).

terminate her was pretextual because Lindsay Richmond, the Discipline Liaison for the Secretary's Personnel Department, made the decision based solely on her review of Greene's performance evaluations, attendance records, and counseling memos. Greene's arguments invoke what is commonly called the "cat's pay" theory of liability . "Under this theory, an employer is liable if a non-decision-maker who is motivated by discriminatory bias is a proximate cause of another employee's adverse employment action." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 604 (7th Cir. 2014). This theory requires a showing that others harbored discriminatory animus against her and that those employees' input was a proximate cause of the challenged adverse action. *Id.* As discussed, Greene has cited circumstantial evidence that would permit a reasonable jury to infer that the number of recorded absences and her final evaluation score were the product of her supervisors' discriminatory animus. And the Secretary acknowledges that Richardson relied on these matters in deciding to terminate Greene. In sum, Greene has presented circumstantial evidence that would satisfy liability under a cat's paw theory.

Additionally, "[w]here the plaintiff does not rely solely on *McDonnell Douglas*, she may survive summary judgment even without evidence that the employer's explanation is dishonest." *Joll*, 953 F.3d at 933. The Court concludes that the numerous items of circumstantial evidence discussed above would allow a reasonable jury to infer discriminatory motive, even if the Secretary's explanation for her termination was not dishonest.

For these reasons, the Court concludes that Greene has presented evidence that would "allow the trier of fact to conclude that it is more likely than not that discrimination

lay behind the adverse action . . . ."  *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).  The Secretary is not entitled to summary judgment on Greene's discrimination claims.

### 2.    Hostile work environment claims

Greene contends that the Secretary negligently permitted employees to create a hostile work environment for her based on her status as a woman and a pregnant woman.  "[A] hostile work environment counts as an adverse action ('unlawful employment practice') within the meaning of Title VII's prohibition of race [and sex] discrimination in 42 U.S.C. § 2000e-2(a)."  *Gates v. Bd. of Educ. of City of Chi.*, 916 F.3d 631, 636 (7th Cir. 2019).  To sustain a claim for a hostile work environment, a plaintiff must show "that (1) the employee was subject to unwelcome harassment; (2) the harassment was based on the employee's race [or other protected characteristic]; (3) 'the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment'; and (4) there is a basis for employer liability."  *EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024) (quoting *Johnson*, 892 F.3d at 900).

In assessing whether harassment was so severe or pervasive that it altered the conditions of employment, courts apply an "objective and a subjective test."  *Id.*  "[T]he environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Id.* (quoting *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (internal quotation marks omitted)).  The objective inquiry "depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it

unreasonably interferes with an employee's work performance.'" *Johnson*, 892 F.3d at 900 (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)); *Vill. at Hamilton Pointe*, 102 F.4th at 401. Courts also consider the relationship between the harassing party and the plaintiff. Harassment by a direct supervisor is considered more severe than harassment by an indirect supervisor, which in turn is considered more severe than harassment by a coworker. *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1117 (7th Cir. 2022).

The "severe or pervasive" element of a hostile work environment claim distinguishes legally actionable harassment from "[o]ffhand comments, isolated incidents, and simple teasing" which "do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012). "Discrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees." *Johnson*, 892 F.3d at 901 (quoting *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001)). Still, conduct may be "a far cry from hellish" yet still severe or pervasive enough to affect the conditions of employment. *Id.* "Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury," but summary judgment is appropriate where "no reasonable jury could find the conduct at issue severe or pervasive." *Id.*

In this case, no reasonable jury could find that "the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." *Id.* at 900. Greene asserts that her supervisor Larry Morales "regularly made sex-based comments to [Greene] and other female employees" that

21

made her uncomfortable and references nine alleged instances when this conduct occurred.  Pl.'s Stmt. of Add'l Material Facts, Ex. 1 at ¶¶ 4, 5, 11, 14, 18, 19, 20. Greene also references two comments from colleagues and one more comment from another supervisor.  Pl.'s Stmt. of Add'l Material Facts, Ex. 1 at ¶¶ 24, 26, 30.  In total, Greene alleges these individuals made twelve comments to her or other employees in her presence. *Johnson*, 892 F.3d at 902 ("Comments made to non-plaintiff co-workers carry less weight in the evaluation of a hostile environment claim, but they are not irrelevant.").  Greene characterizes these comments as "broad, denigrating statements about women," including comments about women's "time of the month," comments of a sexual nature, and unwelcome statements about her pregnancy.  Pl.'s Resp. at 14.  But Greene provides only general assertions about several of these comments, rather than specific details that would allow the Court to determine the comments collectively may meet the severity threshold for her claim.  The specific examples Greene provides include comments such as "you women don't know how to talk to people," "she got herself pregnant," and "I don't like your body, you don't even look like you've been pregnant."

The Court assumes that the environment at the Secretary's office was subjectively offensive to Greene.  Still, the conduct was not objectively severe or pervasive enough to alter the conditions of her employment.  A reasonable person very well might consider this conduct unprofessional or abrasive.  But "having supervisors who are short tempered, hostile, unfairly critical, and disrespectful, does not amount to objectively . . . severe [ ] or pervasive conduct."  *Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) (quoting *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal

quotation marks omitted)).  And remarks like these that are not serious or threatening—even if rude and disrespectful—commonly do not rise to the level of severe harassment that is considered to alter the conditions of employment.  *See, e.g.*, *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (holding that plaintiff did not demonstrate severe or pervasive environment where colleagues "used vulgar language in her presence, occasionally cursed at her, yelled at her, and made isolated comments about older women in the workplace").

Though "conduct that is not particularly severe but that is an incessant part of the workplace environment" may be considered pervasive, sharing Greene's pregnancy status with other employees without her consent, heightened monitoring, including while she used the bathroom, and working in an unfavorable work assignment, do not meet the severity threshold, given the totality of circumstances in this case.  *See Jackson v. County of Racine*, 474 F.3d 493, 499–500 (7th Cir. 2007) (daily inappropriate touching and sexual comments could allow a reasonable jury to find pervasive harassing conduct); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.").

Greene also asserts that one of her female supervisors, Gianna Marano, "frequently" physically touched her "in a way that caused her distress."  Pl.'s Stmt. of Add'l Material Facts, Ex. 1 at ¶ 8.  But Greene provides no factual detail about these interactions.  The Seventh Circuit has stated that "[t]here are some forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor."  *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000).  "A

hand on the shoulder, a brief hug, or a peck on the cheek lie at this end of the spectrum." *Id.* The Seventh Circuit stated that these types of acts "typically will not be severe enough to be actionable in and of themselves." *Id.* On the record before the Court, Greene has not presented evidence that would permit a reasonable jury to find that Marano's physical contact, even if unwelcome, meets the necessary severity threshold when considered with the totality of the record.

In sum, Greene has not offered evidence that would permit a reasonable jury to find that she experienced severe or pervasive harassment that altered the conditions of her employment. Even if one considers all of the instances of alleged harassment together and views the facts in the light most favorable to Greene, her hostile work environment claims cannot succeed.

### Conclusion

The Court grants the Secretary's motion for summary judgment [dkt. no. 92] on Greene's hostile work environment claims but denies the motion with respect to her discrimination claims. The Court sets the case for a telephonic status hearing on December 1, 2025 at 9:05 a.m., using call-in number 650-479-3207, access code 2305-915-8729, to discuss the length of trial and set a prompt trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  November 24, 2025